Patrick P. Toscano, Jr., Esq. (Attorney No. 014461986)
Matthew J. Toscano, Esq. (Attorney No. 305642019)
**THE TOSCANO LAW FIRM, LLC**
80 Bloomfield Avenue
Suite 101
Caldwell, NJ 07006
Phone: (973) 226-1691
Facsimile: (973) 226-1693
*Attorneys for Plaintiff,*
*Chancey Skipper*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHANCEY SKIPPER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE COUNTY OF ESSEX (NJ)<br><br>　　　　　　Defendant. | **COMPLAINT AND JURY DEMAND** |

Plaintiff, Chancey Skipper, by and through his undersigned attorneys, The Toscano Law Firm, LLC, as and for his Complaint in the above-entitled action against the defendant, The County of Essex (NJ), alleges the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over plaintiff's claims pursuant to 42 U.S.C. § 1983, which secures the protection of, and to redress for, the deprivation of rights secured by the United States Constitution. Moreover, this Court has jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331, as this action presents claims under the Constitution, laws, or treaties of the United States.

1

2. This Court has supplemental jurisdiction over the state law causes of action under 28 U.S.C. § 1367(a), as they arise from the same case or controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as the events or omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

4. Plaintiff, Chancey Skipper (hereinafter, the "plaintiff" or "Skipper"), at all relevant times mentioned herein, was employed by defendant Essex County, New Jersey within the Essex County Department of Corrections (hereinafter, the "department" or "ECDOC"), at the Essex County Correctional Facility, last serving in the rank of Correctional Police Officer. Skipper enjoyed an estimable, laudable, and impeccable record of employment, and had neither been charged with any violations nor had any Internal Affairs investigations sustained against him within the ECDOC at any time during his twenty-four (24) years of service, other than the frivolous charges brought (which form the gravamen of this litigation) in an effort to deny Skipper a rightful and merit-based promotion and force him to resign, as discussed further hereinbelow. Moreover, Skipper has achieved consistently excellent annual employee evaluations (which are conducted by Sergeants and Lieutenants within the ECDOC), never receiving any negative ratings over the entirety of his career. Essentially, Skipper was revered, respected and esteemed by all during his time at the ECDOC. Moreover, Skipper admirably served in the United States military prior to his time at the ECDOC, and is now considered a disabled veteran as a result of his praiseworthy service to his country.

5. Defendant, Essex County, New Jersey (hereinafter, the "County" or "Essex"), is a governmental entity established pursuant to the laws of the State of New Jersey, and is located and operating within the State of New Jersey. The County maintains its principal place of business at

465 Martin Luther King Boulevard, Hall of Records, Newark, New Jersey 07102. At all times relevant to the allegations herein, the County maintained, supervised, operated, ran, controlled, monitored and/or ran the Essex County Department of Corrections, and was solely responsible for the complete management, regulation, administration and oversight of same.

## RELEVANT FACTUAL AVERMENTS

6. Plaintiff Skipper repeats and realleges the allegations set forth in the preceding paragraphs with the same force and effect as if each were set forth at length herein.

7. During the calendar year 2019, Skipper participated in and sat for the ECDOC Sergeant's Exam in connection with current and future promotional opportunities available within the department at that time.

8. As a result of his earned scoring and interview process, Skipper was placed at the thirty-fourth (34th) position on the ECDOC Sergeant's promotional list. From 2019 through 2021, the ECDOC promoted its Corrections Officers directly from that list in accordance with their place/standing on same.

9. By April 2021, while that promotional list was still active, Skipper sat first (1st) thereon. At that time, it was widely known that any promotional availability was generally given to the individual sitting atop the list. So, plaintiff Skipper, having held an esteemed work record and no disciplinary history whatsoever, was broadly recognized as the next ECDOC Correctional Police Officer to be promoted to Sergeant within the department. To make matters even worse, at that time, there existed both a need for and an open position for the rank of Sergeant.

10. However, on April 9, 2021, Skipper was illegally/wrongfully bypassed for a rightfully deserved promotion to the rank of Sergeant within the ECDOC. Rather than promptly promote Skipper, the ECDOC bypassed Skipper and instead wrongfully promoted officers over

3

Skipper, which officers sat below Skipper on the list. The decision to bypass Skipper was, at minimum, bizarre, improper, outrageous and indefensible.

11. Consequently, Skipper, through legal counsel, properly executed and filed (among other things) a Title 59 Notice of Tort Claim with the County on April 13, 2021, regarding the ECDOC's illegal bypass and failure to promote him.

12. Soon thereafter, Skipper contacted the ECDOC Warden to inquire as to why he was bypassed for his rightfully earned promotion to Sergeant. The Warden then curiously advised Skipper that the sole reason for Skipper's promotional bypass was because Skipper was or may be the target of a pending "federal investigation". Skipper was flabbergasted, as he knew of nothing wrongful or unlawful whatsoever that he may have done to allow for such a federal criminal investigation.

13. Skipper, again through legal counsel, immediately contacted legal counsel for the ECDOC regarding the potential investigation, and asked for any and all information regarding or in support of the Warden's allegations. Skipper's request for information was wholly ignored.

14. On May 24, 2021, Skipper (once again through legal counsel) followed-up with legal counsel for the ECDOC regarding the alleged federal investigation targeting Skipper. Legal counsel for the ECDOC advised that the United States Marshal Service received an anonymous letter, dated "March 2020" and signed "Dorm 3 Pretrial Detainees – Essex County Correctional Facility", which alleged certain violations against Skipper during his performance of duties at the Essex County Correctional Facility. **Although the letter apparently was received over a year prior**, the ECDOC advised that the ECDOC Internal Affairs Bureau was still investigating the allegations in same.

4

15. On May 26, 2021, Skipper (through legal counsel) submitted a letter to legal counsel for the ECDOC, mentioning that the alleged anonymous letter had, at that time, been in Essex County's possession for some fourteen (14) months. Skipper further noted the absurdity of the notion that the "anonymous" letter was drafted and submitted by pretrial detainees, for numerous obvious reasons.

16. On July 15, 2021, Skipper (through legal counsel) again followed-up with the ECDOC requesting an update regarding the alleged potential "federal investigation" into Skipper as a result of the "anonymous" letter. The ECDOC stated that the ECDOC Internal Affairs Bureau was still investigating and, as a result, no other information could be divulged at that time.

17. On July 29, 2021, Skipper was served with a Preliminary Notice of Disciplinary Action (hereinafter, "PDNA") from the ECDOC advising that the department was seeking a sixty (60) day suspension for certain alleged violations of ECDOC rules, regulations and/or policy. Skipper immediately understood the PNDA as pretextual, bogus, and improper post-bypass justification for skipping over the plaintiff for his deserved promotion to the position of Sergeant within the ECDOC.

18. The PNDA listed three (3) charges against Skipper: (1) Violation of N.J.A.C. 4A:2-2.3(a)(1) – Incompetency, Inefficiency, or Failure to Perform Duties; (2) Violation of N.J.A.C. 4A:2-2.3(a)(7) Neglect of Duty; and (3) Violation of N.J.A.C. 4A:2-2.3(a)(12) – Other Sufficient Cause.

19. Specifically, the PNDA contained Lieutenant Greg Bartelloni's (hereinafter, "Bartelloni") investigative "findings". Bartelloni's incomplete, inadequate and one-sided investigation into Skipper concluded on June 30, 2021, and focused on Skipper's conduct while on-duty from March 22, 2021 through March 25, 2021. Bartelloni alleged that Skipper "was

stagnant at his desk for long periods of time and did not conduct his tours [. . .]" and was "sitting watching TV" during his shift. Bartelloni further alleged that Skipper failed to supervise the lunch feed during a certain time period.

20. The PNDA, on its face, sorely violated the colloquially referred to "forty-five (45) day rule", N.J.S.A. 40A:14-147, as said charges were brought approximately eighty-one (81) days out of time. Moreover, the suggested discipline of a sixty (60) day suspension was, on its face, plainly draconian and violative of all progressive disciplinary guidelines, especially since Skipper was an exemplary employee with no past disciplinary history.

21. On August 3, 2021, Skipper (through legal counsel) requested all relevant discovery related to his disciplinary matter from legal counsel for the ECDOC.

22. On August 5, 2021, the ECDOC sent the full discovery packet that the County intended to use for the then-pending disciplinary hearing regarding the charges against Skipper. Further, the ECDOC advised that the disciplinary hearing was scheduled for August 27, 2021.

23. Included in the full discovery was Bartelloni's investigative report (hereinafter, the "Bartelloni Report"). The Bartelloni Report noted that the ECDOC investigation into Skipper was conducted as a direct result of an anonymous letter initially received by the United States Marshal's Service, which was subsequently forwarded to the ECDOC.

24. Importantly, the Bartelloni Report stated that the entirety of the alleged violations as against Skipper were captured on videotape. It further stated that a request was made by an investigating officer for the extraction of the videotapes depicting Skipper's alleged violations almost immediately after the anonymous letter was forwarded to the ECDOC.

25. Full discovery also contained three other investigative reports submitted by two (2) investigating officers subordinate to Bartelloni, each report providing an analysis of the above-

mentioned videotapes. All of these investigative reports were submitted to Bartelloni between April 1, 2021, and April 5, 2021. No other investigative reports or findings were submitted to Bartelloni after April 5, 2021.

26. Again, as discussed above, the Bartelloni Report/Bartelloni's investigation was completed June 30, 2021 (approximately ninety-seven (97) days after the last date of the incident and fifty-two (52) days after the expiration of the forty-five (45) day rule), and the charges against Skipper were nevertheless filed on July 29, 2021 (approximately 126 days after the last date of the incident and eighty-one (81) days after the expiration of the forty-five (45) day rule).

27. On August 24, 2021, Skipper (through legal counsel) advised the ECDOC of its gross, inexcusable, unpardonable, and patently obvious violation of the forty-five (45) day rule, as well as its violation of any/all progressive disciplinary concepts pursuant to N.J.S.A. 40A:14-181.

28. But the plaintiff's nightmare as laid out herein gets worse. On or about September 1, 2021, approximately nine (9) ECDOC Correctional Police Officers were promoted to the position of Sergeant, all of whom sat below Skipper on the subject promotional list. At that time, the charges as described in the PNDA were still pending against the plaintiff. Moreover, the ECDOC continued to pretextually and illegally utilize same as justification for bypassing and failing to promote Skipper.

29. Skipper continued to wait for his disciplinary hearing and/or determination throughout the remainder of the year 2021, as well as a large part of the year 2022. The length of his waiting for same was, simply put, astounding. His career and reputation within the ECDOC was essentially decimated/eviscerated on the daily.

30. On or about April 1, 2022 Skipper, being under immense psychological pressure from the still-pending/sham charges brought against him, as well as the incessant embarrassment

from same and the department's continued failure to promote him, was forced to retire from the ECDOC for the sake of his own sanity.

31. Appallingly, on April 11, 2022, and not even two (2) weeks after his forced retirement, Skipper received a Final Notice of Disciplinary Action (hereinafter, "FNDA") **advising that the charges against him as outlined in the PDNA were withdrawn**. The FNDA further noted that a disciplinary hearing was never even held as to the PDNA charges.

32. Indeed, the true and only reason that the ECDOC brought the specious internal affairs charges against Skipper was in an effort to prevent Skipper from being promoted to the position of Sergeant, a promotion which he rightfully earned, on his own merit, as discussed herein.

33. Furthermore, as alluded to hereinabove, the defendant County and the ECDOC, with deliberate indifference, permitted the pending charges against Skipper to linger for myriad months and used same as a pretextual reason for the department's failure to promote Skipper to the position of Sergeant.

34. As any reasonable person could ascertain/see, the defendant County/ECDOC promptly dropped the internal affairs charges once it was successful in ousting Skipper from the department altogether, further evincing the fact that the department's goal all along was to force Skipper to retire from the County/ECDOC rather than fully adjudicate what it wrongfully, illegally and unjustly described as legitimate allegations against its employee. Indeed, had the internal affairs charges been legitimate and valid in the first instance, Skipper would have not been statutorily/legally able to retire in good standing the way he did.

## FIRST CAUSE OF ACTION
*(Violation of 42 USC § 1983)*

35. Plaintiff Skipper repeats and realleges the allegations set forth in the preceding paragraphs with the same force and effect as if each were set forth at length herein.

36. In violation of 42 U.S.C. § 1983, the defendant County of Essex (and its employees) at all times operated, controlled, supervised and oversaw the ECDOC and, while acting under color of law, the defendant County of Essex (and its employees) viciously, violently, maliciously, unreasonably and perversely subjected the plaintiff to a deprivation of the plaintiff's rights, privileges, or immunities secured by the United States Constitution.

37. Specifically, defendant County of Essex deprived the plaintiff of his Fifth Amendment and Fourteenth Amendment rights under the United States Constitution.

38. The ECDOC and its employees, as a public entity and as public employees working for defendant County of Essex, acted for or on behalf of a governmental entity and/or abused their position or the power conferred upon them at the time the plaintiff's rights were deprived.

39. Moreover, prior to the above-mentioned dates, defendant County of Essex developed, cemented, engrained, upheld, preserved, and maintained accepted policies or customs exhibiting deliberate indifference to the constitutional rights of employees at the ECDOC, which eventually and directly caused the egregious violations of the rights of plaintiff Skipper.

40. Additionally, defendant County of Essex failed to use reasonable care in the selection and monitoring of its employees, failed to properly train and/or supervise them and failed to prevent the violations of the plaintiff's rights at the hands of the ECDOC and its employees.

41. Further, defendant County of Essex, under color of state law, directly or indirectly approved or ratified the unlawful, malicious, and wanton conduct of the ECDOC and its employees upon the plaintiff herein.

42. Moreover, defendant County of Essex failed to train ECDOC employees as to how to appropriately handle the ECDOC's promotional process or the New Jersey State Attorney General Guidelines, Internal Affairs Policy and Procedures (NJSAGG, IAPP's).

43. Unequivocally, defendant County of Essex knew or should have known that the ECDOC and its employees handled the promotional process for those employed within the department.

44. Indeed, the lack of training of ECDOC employees led to them violating the plaintiff's constitutional rights as described hereinabove.

45. Notwithstanding the above, defendant County of Essex, as policy a maker, refused to retain or properly train ECDOC employees in how to properly conduct and oversee ECDOC promotional processes.

46. The lack of training and/or the inadequate training in these areas is surely tantamount to a custom and/or policy that encourages and, indeed as occurred herein, necessitates the gross violation of these constitutional rights.

47. The ECDOC and its employees knew/believed full well that their actions toward the plaintiff would not be properly monitored by defendant County of Essex and that their misconduct would never be adequately investigated or dealt with, but would surely and certainly be tolerated.

48. Defendant County of Essex's blatant and deliberate indifference herein led to the inescapable fact that if they trained and monitored the ECDOC employees properly, then the within abhorrent and illegal actions and damages to the plaintiff would never have taken place.

## SECOND CAUSE OF ACTION
*(Violation of the New Jersey Civil Rights Act – N.J.S.A. 10:6-2(c))*

49. Plaintiff Skipper repeats and realleges the allegations set forth in the preceding paragraphs with the same force and effect as if each were set forth at length herein.

50. By virtue of the above, Skipper has been horrifically and appallingly deprived of his procedural and substantive due process and equal protection rights, privileges or immunities

secured by the New Jersey Constitution, and/or his procedural and substantive due process and equal protection rights, privileges, or immunities secured by the Constitution or laws of this State of New Jersey, and his exercise or enjoyment of those procedural and substantive rights, privileges, or immunities has been interfered with by defendant Essex County and certain of its agents, employees and representatives, by threats, intimidation or coercion, who at all times were acting under color of law, all in violation of N.J.S.A.10:6-2.

51. More specifically, and as outlined hereinabove, defendant County of Essex:

   a) Never truly objectively investigated what happened at the ECDOC involving Skipper at all, thereby violating all substantive and procedural due process rights that Skipper should have enjoyed pursuant to the NJSAGG, IAPP's;

   b) Negligently or purposely failed to oversee the investigation conducted by the ECDOC into Skipper, permitting same to linger for many months (and, indeed, many years, since the "anonymous" letter was received in March 2020) until Skipper ultimately was forced to retire;

   c) With deliberate indifference, illegally charged Skipper with administrative offenses and preventing him from achieving a well-earned promotion, all the while knowing he did not violate any ECDOC Rule and Regulation at any time;

   d) With deliberate indifference, illegally sought Skipper's long-term suspension from the ECDOC and prevented him from achieving a well-earned promotion, all the while knowing he did not violate any ECDOC Rule and Regulation at any time;

   e) With deliberate indifference, purposely psychologically tortured Skipper (and his family) for months by charging him administratively, seeking his long-term suspension from the ECDOC, preventing him from achieving a well-earned

promotion, and humiliating him during that process, even though all charges advanced by defendant Essex County against Skipper were eventually dismissed, with no witnesses to the alleged ECDOC incidents ever being subpoenaed for any administrative trial and/or disciplinary hearing, or any disciplinary hearing ever taking place.

## THIRD CAUSE OF ACTION
*(Violation of N.J.S.A. 40A:14-147)*

52. Plaintiff Skipper repeats and realleges the allegations set forth in the preceding paragraphs with the same force and effect as if each were set forth at length herein.

53. Defendant Essex County, through the ECDOC and its employees, submitted a complaint against the plaintiff charging a violation of the ECDOC internal rules and regulations.

54. Defendant Essex County, through the ECDOC and its employees, filed the complaint well and far outside of the forty-five (45) day limitation under New Jersey law.

55. Specifically, the Bartelloni Report, as discussed above, was filed approximately ninety-seven (97) days after the last date of the incident and fifty-two (52) days after the expiration of the forty-five (45) day rule, and the charges were filed approximately 126 days after the last date of the incident and eighty-one (81) days after the expiration of the forty-five (45) day rule.

56. At the latest, Bartelloni obtained sufficient information to file the matter upon which the complaint was based on or about April 5, 2021, eleven (11) days after the last date of the alleged incident (March 25, 2021). Thus, even if the forty-five (45) day rule did not begin to run until April 5, 2021, the Bartelloni Report and the filed charges were still both wildly outside of the statutory time regulation under New Jersey law.

57. As a result of defendant Essex County's violation of the forty-five (45) day rule, the plaintiff was continuously, inappropriately, and illegally denied a justified and well-earned promotion to the rank of Sergeant within the ECDOC.

## FOURTH CAUSE OF ACTION
*(Violation of NJSAGG, IAPPs – N.J.S.A. 40A:14-181)*

58. Plaintiff Skipper repeats and realleges the allegations set forth in the preceding paragraphs with the same force and effect as if each were set forth at length herein.

59. Under New Jersey law, every law enforcement agency in the State is required to adopt and implement guidelines that are consistent with the guidelines that have been promulgated by the Attorney General through the police bureau and the division of criminal justice.

60. As discussed hereinabove, defendant Essex County, through the ECDOC and its employees, conducted a fraudulent, laughable, incomplete, one-sided, half-baked and deceitful investigation against the plaintiff that was in direct violation of the NJSAGG, IAPPs.

61. Moreover, as discussed hereinabove, defendant Essex County, through the ECDOC and its employees, conducted an inappropriate, illegal, and deceitful promotional process, in direct violation of the NJSAGG, IAPPS.

62. As a result of defendant Essex County's numerous violations of the NJSAGG, IAPPs, the plaintiff has been damaged, as discussed herein.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff, Chancey Skipper, prays that this honorable United States District Court:

(a) accept jurisdiction over this matter;

(b)     empanel a jury to hear and decide this matter;

(c)     award compensatory, consequential, and emotional distress damages, as well as all remedies available under N.J.S.A. 10:6-1, *et seq.*, N.J.S.A. 40A:14-147; and N.J.S.A. 40A:14-181;

(d)     award punitive damages;

(e)     award to plaintiff the reasonable statutory attorneys' fees, interest and costs of this litigation; and

(f)     award such/any other relief that this Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to F.R.C.P. 38, the plaintiff herein demands a trial by jury on all counts.

Dated: June 20, 2022                              By:    */s/ Patrick P. Toscano, Jr.*
                                                                                               Patrick P. Toscano, Jr.

                                                                                       */s/ Matthew J. Toscano*
                                                                                       Matthew J. Toscano